IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **RALPH L. HAYES,** | ) | |
| *Plaintiff,* | ) | |
| | ) | **CASE NO. 6:13-CV-00008** |
| v. | ) | |
| | ) | <u>**MEMORANDUM OPINION**</u> |
| **LYNCHBURG CITY SCHOOL BOARD,** | ) | |
| *Defendant.* | ) | |

Ralph Hayes claims race-based discriminatory treatment in employment and wrongful dismissal in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. The Defendant, the Lynchburg City School Board, filed a motion for summary judgment, and Plaintiff countered with a filing entitled "Plaintiff's Dispositive Motions," which contained a request for "Summary Disposition" and which I construe as a cross-motion for summary judgment. Plaintiff later also filed a second motion for summary judgment. The record in this case reveals no credible evidence that Plaintiff was subject to discrimination on account of his race, and ultimately shows he was terminated for legitimate non-discriminatory reasons that have nothing to do with his race. Accordingly, I will grant Defendant's motion and deny Plaintiff's motions.

**I.**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

Generally speaking, "a pro se complaint must be liberally construed and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Middleton v. United States*, 2012 U.S. Dist. LEXIS 159347, at *6 (W.D. Va. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Liberal construction extends to other pleadings filed. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (noting that "[e]ven in the formal litigation context, *pro se* litigants are

held to a lesser pleading standard than other parties"). Here, Plaintiff was initially represented by counsel, and so his complaint itself is not entitled to this deference. Later, Magistrate Judge Robert S. Ballou granted Plaintiff Counsel's motion to withdraw, and I will therefore liberally construe Plaintiff's subsequent pro se filings. However, evidence submitted by a pro se Plaintiff may still be, and ultimately will be in this case, disregarded when it is not credible, *see Celotex*, 477 U.S. at 330-34 (1986), or when it is largely inadmissible, *see Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party may not rest on speculation, hearsay, or opinion to demonstrate a genuine dispute of material fact. *See Celotex*, 477 U.S. at 324. Rather, the

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purpose of the motion only), admissions, interrogatory answers, or other materials[.]

Fed. R. Civ. P. 56(c)(1)(A); *see also Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390 (4th Cir. 1994); *Orsi v. Kickwood*, 999 F.2d 86 (4th Cir. 1993).

## II.

The summary judgment record discloses the following facts.

Plaintiff Ralph Hayes was hired by the Lynchburg City Schools as a Field Coordinator in the Environmental Sciences sub-department of the Facilities Department on May 5, 1999. The Environmental Sciences sub-department was responsible for overseeing and providing support to the custodial program as well as for running the warehouse and hazmat programs. The other two sub-departments, Building Maintenance and Grounds Maintenance, handle the repair of the buildings and grounds, as their names suggest. On July 1, 2003, Hayes was promoted to

Supervisor of Environmental Services, a position created for him by Superintendant James McCormick. Since 1999, Hayes routinely received strong performance evaluations.

In 2007, the position of Assistant Director of Facilities and Grounds became open when Assistant Director Richard Jones resigned. The position was posted and a panel of administrators was assembled to review all applications. The position entails overseeing all grounds work, and the panel considered it essential that a successful applicant have extensive experience in landscaping and grounds work. The panel selected Don Floyd, head of a landscape design and maintenance company, because of his expertise in landscaping and grounds work. According to Defendant, Hayes did not demonstrate experience in landscaping or grounds, as his responsibilities focused on maintaining the interior of the schools and buildings, and he was not as strong a candidate. Plaintiff, on the other hand, claims that Floyd had less experience and fewer qualifications because Floyd lacked a background in maintenance.

In 2009, the Director of Facilities, Edward "Sonny" Witt, was promoted to Assistant Superintendent. The African-American Superintendent, Paul McKendrick, promoted Steve Gatzke to the vacant position. At the time, Gatzke was Assistant Director of Facilities and Building Maintenance. Gatzke was hired in 1995 and, prior to that, had sixteen years of experience in facility and grounds management outside the school system. Defendant states that these qualifications, along with Gatzke's current position, made him the "natural choice" to replace Witt as the Director of Facilities. Plaintiff claims that he was not given notice and opportunity to apply for the job.

The salaries of Lynchburg City Schools employees are determined by pay scales, with one pay scale being used for classified employees and another for administrators. A salary freeze implemented at the end of the 2008-2009 school year continued for five years, meaning that the

salaries for all employees were not increased during this period.

During the 2011-2012 school year, the Lynchburg City Schools needed to make staff reductions due to financial constraints, and began planning to let people go for the 2012-2013 year. The School Board adopted Reduction in Force Policy 5-53.7 on March 20, 2012. It governed the process for reducing classified positions, and had no bearing on administrator positions. Hayes was an administrative employee. The contracts signed by the administrators expired on June 30, 2012, with an option to renew for the following year, and contained provisions indicating at-will employment.

Mr. Gatzke was told to reduce the Maintenance Department budget by $500,000. He reduced materials and supplies and eliminated custodial, warehouse delivery, and field coordinator positions, but still needed to make cuts. Ultimately, Gatzke determined that the Supervisor of Building Maintenance and the Assistant Director, who also supervised grounds maintenance at that point, could not be eliminated. However, he determined that the Supervisor of Environmental Services could be eliminated, with the responsibilities absorbed by other positions. Accordingly, he recommended eliminating the position.

The new Superintendent, Scott Brabrand, who began work on April 1, 2012, made the final recommendations to the Lynchburg School Board. Then, on May 11, 2012, Mr. Brabrand and Mr. Gatzke met with Mr. Hayes and informed him that his contract would not be renewed. The letter issued to Mr. Hayes incorrectly referred to the Reduction in Force policy, Policy 5-53.7, which did not apply to Hayes as an administrative employee.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on July 12, 2012, and pursued this action by filing a complaint on January 22, 2013, within 90 days of his receipt of a Right to Sue letter. Plaintiff's attorney moved to withdraw on

September 25, 2013, and the motion was granted on October 10, 2013. Eventually, after several discovery related motions, both Defendant's motion for summary judgment and Plaintiff's dispositive motions were filed on January 31, 2013. Plaintiff and Defendant responded to each other's motions on February 7, 2014. A hearing on the motions for summary judgment was held on February 20, 2014.

The docket reflects that Plaintiff, subsequent to the withdrawal of his attorney and prior to the initial hearing on the cross-motions for summary judgment, was not sent a *Roseboro* notice pursuant to *Roseboro v. Garrison*, 528 F.3d 309 (4th Cir. 1975). The record in this case does not appear to present the scenario *Roseboro* was intended to prevent, in that Plaintiff has been given adequate notice and opportunity to respond to all filings, has in fact filed numerous documents in support of his motion for entry for judgment and in opposition to Defendant's motion for the same, and attended and argued at the summary judgment hearing on February 20, 2014. Nevertheless, out of an abundance of caution, I formally issued Plaintiff a *Roseboro* notice on February 25, 2014, and gave him until March 4, 2014 to file any additional documents or evidence. On March 4, Plaintiff did file an additional document titled "Response to Motion for Summary Judgment" (docket no. 77). Also on March 4, 2014, a hearing was conducted on Defendant's various motions in limine.

### III.

#### 1. Plaintiff's Motions for Judgment

In Plaintiff's first filing, Plaintiff alleges that "Summary Disposition" ought to be granted in his favor because "Defendant has not provided *any* evidence to Plaintiff that he was not Discriminated; Retaliation and Wrongful Dismissal based on the letter plaintiff received, May 11, 2012, from Lynchburg City Schools Superintendent." Pl.'s Dispositive Mot. 1 (emphasis

added). Plaintiff attaches the May 11, 2012, termination letter as his first exhibit. However, I agree with Defendant that "ample evidence was filed with the Court in connection [with] the defendant's summary judgment motion." Def.'s Resp. to Pl.'s Dispositive Mot. 5. In fact, 239 pages of evidence are attached to the brief in support of Defendant's summary judgment motion, and, regarding the letter of May 11, 2012, Defendant included the following exchange from Plaintiff's deposition:

> A: That policy is for classified employees and my name is not on that list.
>
> Q: So your testimony is that the classified policy 5-53.7 doesn't apply to you?
>
> A: Yes.

Def.'s Summ. J. Br. 22 (quoting Hayes Dep., p. 113, ll. 1-4). Plaintiff can hardly suggest that Defendant has not adequately addressed a certain piece of evidence when Defendant directly quoted Plaintiff's testimony that the policy discussed in the letter is inapplicable.

Plaintiff's motion states that "defendant did not follow its own policy" as expressed in the letter, but rather than asserting a claim specific to himself, Plaintiff alleges that "other school personnel who received the same letter should have filed a case too." Pl.'s Dispositive Mot. 1. To the extent Plaintiff alleges that Defendant did not follow its own policy with respect to himself, Plaintiff's deposition testimony admits that "Lynchburg City Schools was not required to comply with Policy 5-53.7 when eliminating [his administrator] position." Def.'s Resp. to Pl.'s Dispositive Mot. 5. To the extent Plaintiff attempts to broaden this litigation by bringing claims against Defendant on behalf of other employees who failed to file a case, Plaintiff's actions are barred by a lack of standing. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (noting that a plaintiff must have personally suffered an injury before he can bring a lawsuit).

Liberally construing his filings, Plaintiff alleges a violation of rules relating to

[7]

depositions. However, a thorough review of the deposition transcript reveals nothing inappropriate about the questions Plaintiff was asked. Plaintiff may have found it unpleasant to answer certain questions, but the transcript does not reveal any threats or harassment by Defendant's counsel. In fact, counsel repeatedly advised Plaintiff of the consequences of Plaintiff's frequent refusal to answer questions, and was willing to take numerous breaks to accommodate Plaintiff. Simply put, all Plaintiff can demonstrate is aggravation with the deposition process, which is not grounds for judgment on the merits.[1]

Plaintiff has also filed a document entitled "Discrimination/Retaliation/Wrongful Dismissal" containing a list of grievances against Defendant. Pl.'s Dispositive Mot. 8-11. Some of the allegations contained in this document (such as "white employee's in this department was being treated differently than black employee's or "'good old boy' examples") are not backed by "sufficient proof, in the form of admissible evidence, that could carry the burden of proof" at trial. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). Instead, they are merely self-serving assertions without any corroboration. Although Plaintiff has catalogued his grievances with the Lynchburg City School Board and Gatzke in particular with great detail, without any external corroboration, Plaintiff's own recitation of what occurred is no more than the kind of speculation, hearsay, or opinion incapable of creating a genuine dispute of material fact.[2] *See Celotex,* 477 U.S. at 324. Plaintiff's "naked opinion" that he was a victim of

---

[1] I further note that Plaintiff does not cite to the Local Rules for the Western District of Virginia in alleging that Defense counsel violated the rules. Instead, Plaintiff appears to have copied several pages out of the Local Rules for the Middle District of Georgia. These rules are not applicable in this court, and even if they were, there was no violation.

[2] I granted Plaintiff leave to file another document with additional arguments, which Plaintiff did on March 4, 2014. Defendant has objected strenuously to Plaintiff's numerous attempts to introduce evidence following the February 20, 2014 hearing on the motions for summary judgment. I likely would have been obligated to exclude the bulk of Plaintiff's submissions if this case went to trial, pursuant to Defendant's motion under Fed. R. Civ. P. 37, as Plaintiff repeatedly refused to cooperate with Defendant during his deposition. Defendant would be unfairly prejudiced if Plaintiff were allowed to abuse the discovery process in this way. *See, e.g., Projects Management Co. v. Dyncorp Inter. LLC,* 724 F.3d 366 (4th Cir. 2013) (observing that trial court's discretion extended so far as to dismiss cases for discovery abuses, including the failure to timely provide discovery). Ultimately though, I need not decide, for

discrimination is not enough to create a genuine dispute of material fact. *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

The most striking allegation Plaintiff makes is that on two separate occasions, in 2007 and in 2010, Gatzke made racist statements, first saying "the first time I really associated with any niggers was when I attended JMU," and the second time saying "that's what niggers do, my guys are professional and don't have time to clean." Pl.'s Dispotive Mot. 8. The first statement occurred in a conversation between Gatzke and Plaintiff during the car on a trip to Danville; the context of the second statement is unclear based on Plaintiff's filings. But "while isolated statements can constitute direct evidence of discrimination, the statements must be contemporaneous to the adverse employment action." *McCray v. Pee Dee Regional Transportation Auth.*, 263 Fed. Appx. 301, 306, 2008 U.S. App. LEXIS 2625, at *13 (4th Cir. 2008) (citing *Birkbeck v. Marvel Lightning Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994) (statement made over two years before discharge was too remote in time to serve as evidence of discrimination). Here, the statements were allegedly made five and two years before Plaintiff's termination. They are thus too remote in time. Furthermore, Plaintiff has not presented these allegations in an affidavit as contemplated by Federal Rule of Civil Procedure 56(c)(4), and so they are also not before the court in the proper manner.

Other assertions in the document, such as Plaintiff's recitations of his "personal experience with racism in Lynchburg . . . [since at least] 1979" are not relevant when considering Plaintiff's allegations against this particular Defendant. Simply put, any unrelated instances of racism Plaintiff has experienced in the Lynchburg area cannot be imputed to the Lynchburg City

---

purposes of this decision, the admissibility of any of Plaintiff's subsequent filings. Even if they were all admissible, and even if I were to consider all of them, none of them would change my ruling, because in every instance, Plaintiff is either stating his speculative opinion about what happened or attempting to draw inferences of discrimination from conduct that is not described or alleged in his complaint. In either case, the evidence does not create a genuine dispute of material fact.

School Board.

Plaintiff misunderstands the legal standard when claiming that "Summary Disposition" for Plaintiff is warranted because "Defendant has not provided any evidence to Plaintiff that he was not Discriminated." Pl.'s Dispositive Mot. 1. Defendant has no burden to prove to Plaintiff that he was not discriminated against; instead, Defendant has an obligation to respond to Plaintiff's allegations by presenting evidence to the court. Defendant has met this obligation. More significantly, and as Defendant argues, "Plaintiff fails to accept that as the plaintiff in the case it is incumbent upon *him* to meet his preliminary burden of proof to the Court." Def.'s Resp. to Pl.'s Dispositive Mot. 5 (emphasis added). The initial burden rests with Plaintiff, and Plaintiff's motion for judgment essentially attempts to shift the initial burden onto Defendant and then to claim, based on Plaintiff's personal opinion, that Defendant has failed to meet that burden. Because this reasoning is based on a misunderstanding of who bears the preliminary burden of proof, and because Plaintiff mischaracterizes the evidence Defendant has presented, Plaintiff's motion for judgment will be denied.

As for Plaintiff's second motion, it is also completely conclusory in nature, with statements such as "Plaintiff has a meritorious claim" and reiterations of the various things that Plaintiff has claimed in his other filings. I note that, aside from the conclusory nature of all of Plaintiff's allegations, and the fact that another motion by Plaintiff was already filed and responded to by Defendant, the second motion was filed nearly a week after the summary judgment hearing was supposed to be held and late in the afternoon on the day before the rescheduled hearing. This gave Defendant no adequate opportunity to respond. Plaintiff's second motion for summary judgment will also be denied.

### 2. Defendant's Motion for Judgment

*A. Discrimination*

A plaintiff can prove discrimination under Title VII through either direct evidence or through the burden-shifting scheme of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and its progeny. *See Clement v. Satterfield*, 927 F. Supp. 2d 297, 305 (W.D. Va. 2013); *see also Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 (4th Cir. 2008) (citing *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004)) (*McDonnell Douglas* burden-shifting applies to claims under Title VII and § 1981).

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Washington v. Kroger Ltd. Partnership I*, 2012 U.S. Dist. LEXIS 171993, at *3 (W.D. Va. 2012) (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)). Under *McDonnell Douglas*, Plaintiff must first establish a prima facie case of discrimination. *See Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas*, 411 U.S. at 807. To demonstrate a prima facie case of discrimination, Plaintiff must show that:

> (1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Hill v. Lockheed Martin Logistics Mgmt*, 354 F.3d 277, 285 (4th Cir. 2004) (citation omitted). If Plaintiff makes this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. If the employer can do so, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's stated reasons are a pretext for unlawful discrimination. *Id*.

Here, the examples Plaintiff cites as allegedly unlawful racial discrimination provide

neither direct evidence nor prove a prima facie case under *McDonnell Douglas*. Plaintiff's allegations are presented in a haphazard fashion, but I note at the outset that, liberally construed, they are insufficient under either test. Plaintiff has complaints about the way he was treated, infers racially discriminatory motivation, and speculates that decisions were made with an intent to discriminate against him, but these inferences are nothing but the kind of "unsupported speculation [that] is not sufficient to defeat a summary judgment [motion]." *Rivanna Trawlers Unlimited, Inc. v. Thompson*, 840 F.2d 236, 240 (4th Cir. 1988). While Plaintiff categorically cannot prevail under either test, I will analyze his individual claims of unlawful discrimination and demonstrate how they each fail to provide the kind of evidence Plaintiff would need to create a genuine dispute of material fact.

### i. Promotion

In his complaint, Plaintiff claims that he was "passed over for promotions when other less qualified Caucasians were selected" and that "Defendant selected Mr. Gatzke as Director of Maintenance[3] without notice or the opportunity for Plaintiff to apply for the position, even though Plaintiff had more experience and was better qualified for the position." Pl.'s Compl. 8. Plaintiff *was* promoted to a supervisor position in 2003, so the only promotion incident Plaintiff's complaint could be referring to, aside from Mr. Gatzke's 2009 promotion to Director of Maintenance, is the 2007 selection of Don Floyd over Plaintiff for the position of Assistant Director of Facilities and Grounds. Defendant has explained that Floyd was selected because "it was essential that the employee had extensive experience in landscaping and grounds work," and that, "[u]nlike Mr. Floyd [who owned a landscaping business prior to being hired], Mr. Hayes did not demonstrate experience in landscaping or grounds work . . . [because] as Supervisor of

---

[3] Plaintiff's complaint incorrectly lists the position as Director of Maintenance. In fact, the position was Director of Facilities.

Environmental Services his primary responsibility was to maintain the interior of Lynchburg City schools and administrative buildings." Def.'s Summ. J. Br. 4-5. As for Mr. Gatzke, Defendant explains that "he was the natural choice for the position" given his extensive experience and role as Assistant Director before his immediate promotion to Director of Facilities. *Id.* at 5. Defendant also notes that, in his deposition, Plaintiff admitted that any claim that Mr. Gatzke was less qualified for the position was incorrect:

> A: I never stated that. That was a flaw in my lawyer.
>
> Q: All right.
>
> A: I even got the – why he didn't change that and he put that in wrong.

Hayes Dep. P. 120, ll. 16-20.

First, I note that Plaintiff repeatedly refused to answer questions about this time period in his deposition, at one point stating "[y]ou're going to ask the same question about that . . . and that's just based on your opinion, so we can go on and end this and go on to court because I'm going to win because you have nothing." Hayes Dep. P. 159, ll. 4-8. Even setting aside this refusal to cooperate, Plaintiff's response does not elucidate the issue. The response indicates that:

> "Defendant fail[s] to provide that this position was more detailed than what Counsel has informed the court . . . in which Plaintiff has had experience and in which Plaintiff recommend[ed] to [the] panel [that] he would perform both Environmental Services and Grounds. By performing both duties [it] would have been more cost effective since the budget was so tight. [In] 2009 this position in which Mr. Gatzke is currently in was never posted and Plaintiff or others did not have an opportunity to apply for this position."

Pl.'s Resp. Br. 3.

"[I]n a failure to promote case, the Plaintiff must establish that he/she was the better qualified candidate for the position sought." *Evans v. Technologies Applications*, 80 F.3d 954, 960 (4th Cir. 1996). It appears that Plaintiff also claims that he was more qualified than Don Floyd for the Assistant Director of Facilities and Grounds position, but this self-promoting,

conclusory assertion is not enough to suggest he was the better-qualified candidate. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959, 960 (4th Cir. 1996) (plaintiff's "own affidavit, mostly made up of conclusory statements about her qualifications and the deficiencies of her colleagues," was insufficient to establish a prima facie case of discrimination). Plaintiff suggests that Floyd had less experience, and that it would have been more economically efficient for Plaintiff to be promoted to the position. But in fact, "[a]n employer's good faith belief that another candidate is better qualified due to job performance and experience is a legitimate non-discriminatory reason for not promoting someone." *Id.* When making hiring decisions, "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258-59 (1981). Plaintiff may contest Defendant's hiring decision and call it unwise, but there is nothing in the record, other than Plaintiff's own opinion, to suggest that Defendant's decision was not legitimate.

The only evidence that there was any racial animus involved in the 2007 hiring decision is a statement made by Plaintiff in an e-mail sent on June 1, 2007 where he says that "the reason [he] was not hired [was because he is] black and a nuisance." Pl.'s Resp. Br. Ex. 1 4. Plaintiff supplies no evidence to support this assertion, and without any support other than Plaintiff's own uncorroborated statement, there is not enough evidence to create a dispute of material fact.

The 2009 decision to promote Gatzke is even more clearly an instance where there is no evidence of discrimination on the part of Defendant. Plaintiff acknowledges that the statement in the complaint alleging that Plaintiff had superior qualifications compared to Gatzke was incorrect. Def.'s Summ. J. Br. 5. Plaintiff's sole complaint about this decision is that the job opportunity "was never posted and Plaintiff or others did not have an opportunity to apply for

this position." Pl.'s Resp. Br. 3. But as Plaintiff tacitly conceded during oral argument, even if Defendant had preselected Gatzke without an open hiring process where other candidates were allowed to apply, "the preselection would work to the detriment of all applicants for the job, black and white alike," and could therefore not be evidence that Defendant's "hiring decision was pretext" for racial discrimination against Plaintiff. *Anderson v. Westinghouse Savanna River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (quoting *Blue v. United States Department of the Army*, 914 F.2d 525, 541 (4th Cir. 1990)). There is simply no evidence in the record to suggest that Gatzke was chosen because he was Caucasian and because Defendant sought to avoid hiring an African American.

In short, Plaintiff's complaints are generalized grievances which argue that the hiring decisions Defendant made were not as favorable to Plaintiff as they should have been. Regardless of the wisdom of Defendant's hiring policies or the accuracy of Plaintiff's complaints, however, it is obvious that there is no evidence of racial discrimination to be found in Defendant's decisions aside from Plaintiff's characterizations of them as discriminatory.

### ii. Compensation

Plaintiff alleges as the other instance of unlawful discrimination that "his salary and wages [were] less than other similarly situated Caucasian employees of Defendant, and that his compensation was substantially the same as other Caucasian employees in the same department who had positions with less responsibility and/or less seniority." Pl.'s Compl. 8. In his deposition, when asked which employees he was referring to, Plaintiff indicated Floyd, Gatzke, Scott Abercrombie (the Supervisor of Maintenance), and Jason Ferguson (The Supervisor of Transportation).

As Defendant notes and Plaintiff acknowledged, "Directors and Assistant Directors"

receive higher salaries on the administrative pay scale than supervisors because they are "not similarly situated to [supervisors] within the chain of command." Def.'s Summ. J. Br. 20. Thus, neither Floyd nor Gatzke are apt comparisons. Abercrombie is similarly situated, but the undisputed record suggests that "Mr. Hayes received a higher salary than Mr. Abercrombie." *Id.*; *see also* Pl.'s Resp. Br. 3 (admitting midsentence that "my salary was higher than . . . Mr. Abercrombie $50,210").[4] During oral argument, Plaintiff suggested that Abercrombie was paid almost the same amount with less experience in the job, but as Abercrombie and Hayes *were* similarly situated as Supervisors, it is appropriate that their compensation would be similar. As for Ferguson, Plaintiff admitted in his deposition that he doesn't even know how much he was paid:

> Q: Okay. It's your testimony that Jason Ferguson –
>
> A: Probably paid more than me.
>
> Q: Was probably paid more than you?
>
> A: Probably paid more than me. He probably was.
>
> Q: He probably was. Do you know that definitely?
>
> A: No, I don't know it definitely.

Hayes Dep. P. 165, ll. 6-10. In short, as with his complaints about his lack of promotion, Plaintiff is presenting generalized, unsupported complaints he had about his place of employment without providing any evidence outside of his speculation to show there was any discriminatory animus motivating Defendant's decisions.

As for any complaint stemming from the five year salary freeze which was implemented

---

[4] It now appears that Plaintiff is arguing there was racial discrimination at work because Abercrombie received almost the same salary without the years of experience that Plaintiff had. As with the rest of Plaintiff's assertions, there is no evidence other than Plaintiff's speculation to show that Abercrombie received the salary that he did because of an intent to discriminate against Plaintiff.

at the end of the 2008-2009 school year, "the salaries for all employees were not increased during this period, regardless of whether an employee was raised to a new step." Def.'s Summ. J. Br. 6. It would be therefore be impossible to suggest that a salary freeze which affected every person Defendant employed was designed to single out Plaintiff, or to suggest that such an organization-wide freeze was racially targeted.

### B. Retaliation

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) the defendant took adverse employment action against him; and (3) the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). As Defendant has noted, "Plaintiff has produced no evidence of retaliation against him because he filed an EEOC Complaint, or made complaints that he was treated differently because of his race." Def.'s Summ. J. Br. 18. The major claim of retaliation appears to center instead around Plaintiff's termination in 2012. *See* Pl.'s Compl. ¶ 19-32.

All of the allegations in Plaintiff's complaint regarding his termination have to do with the myriad ways in which Defendant's termination of Plaintiff did not comply with School Board Policy 5-53.7. *See, e.g.,* Pl.'s Compl. ¶ 23 ("Defendant failed to provide Plaintiff with at least 60 day's notice as required under its own procedures"); *id.* at ¶ 29 ("Defendant breached its own procedures by failing to make every reasonable effort to place Plaintiff in a vacant position as described more fully in the preceding paragraph"); *id.* at ¶ 31 ("Defendant breached its own procedures and requirements by failing to put Plaintiff on a recall list"). On the one hand, Defendant admits that "the [termination] letter issued to Mr. Hayes incorrectly referenced the new Reduction in Force policy, Policy 5-53.7." Def.'s Summ. J. Br. 14. On the other hand,

Plaintiff admitted in his deposition that Policy 5-537 did not apply to him because he was an administrator rather than a classified employee, rendering all of the allegations in this portion of Plaintiff's complaint irrelevant and incorrect. Plaintiff stated:

> A: That policy is for classified employees and my name is not on that list.
>
> Q: So your testimony is that the classified policy 5-53.7 doesn't apply to you?
>
> A: Yes.

Def.'s Summ. J. Br. 22 (quoting Hayes Dep., p. 113, ll. 1-4). Plaintiff again acknowledged during oral argument that he was not a classified employee. As Defendant notes, this means that "[t]he allegations of paragraphs 19-32 of the Plaintiff's complaint are by Hayes' own admission not true." *Id.* at 22.

Because Plaintiff was an administrator, he was covered by his contract with the Defendant instead of by Policy 5-53.7. The contract was specifically an at will employment arrangement, specifying that "[i]t is understood that your employment can be terminated at any time by either party *for any reason or no reason* by giving two weeks' written notice." *Id.* (emphasis added). Plaintiff was notified approximately six weeks prior to the expiration of his current contract that the contract would not be renewed, satisfying the terms of his at-will agreement. *Id.* at 23. Defendant has shown that "Hayes' position was eliminated due to budget constraints," and there is no evidence that his termination was racially motivated or that "there was any unlawful retaliation against him by virtue of his race." *Id.* Plaintiff's response contains a lengthy diatribe about the reduction in force, largely complaining again that the decisions Defendant made were inefficient without presenting any credible, verifiable evidence that any of Defendant's decisions were motivated by racial animus. Pl.'s Resp. Br. 4-5.

## IV. Conclusion

For the stated reasons, Plaintiff's motions will be denied and Defendant's motion for summary judgment will be granted. An appropriate order follows.

Entered this ⎯⎯7th⎯⎯ day of March, 2014.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Case 6:13-cv-00008-NKM-RSB Document 80 Filed 03/07/14 Page 19 of 19 Pageid#: 824